IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT BRADDOCK | : | CIVIL ACTION |
| | : | NO. 13-06171 |
| v. | : | |
| | : | |
| SEPTA, et al. | : | |
| | : | |
| O'NEILL, J. | : | November 25, 2014 |

### MEMORANDUM

Plaintiff Robert Braddock brings this action against defendants Southeastern Pennsylvania Transportation Authority (SEPTA), Albert Matejik and John Jamison alleging race discrimination and retaliation in violation of the Pennsylvania Human Relations Act (PHRA), Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983. Presently before me are defendants' partial motion to dismiss plaintiff's second amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 16), plaintiff's response (Dkt. No. 18), defendants' reply (Dkt. No. 19) and defendants' supplemental brief on their affirmative defense of exhaustion of administrative remedies (Dkt. Nos. 21, 22). Defendants move to dismiss plaintiff's race discrimination claims set forth in counts I, III, V and his claims for punitive damages. For the following reasons I will grant defendants' motion.

### BACKGROUND

Plaintiff is an African-American male who has worked at SEPTA for over thirty-two years and is employed as a Yard Master. See Dkt. No. 15 at ¶ 9. Plaintiff alleges that his supervisor, defendant Matejik, failed to discipline Caucasian employees for insubordination while disciplining plaintiff for similar conduct and created a racially motivated hostile work environment when he would "yell, raise his voice and snap at Plaintiff" but not at Caucasian employees. See Dkt. No. 15 at ¶¶ 12-27. On April 18, 2011, plaintiff allegedly complained to

Matejik that Matejik was racially discriminating against him and subjecting him to a hostile work environment.  See id. at ¶ 30.  On the same day, plaintiff reported to SEPTA's Equal Employment Opportunity (EEO) department that Matejik was subjecting him to racial discrimination and a hostile work environment.  See id. at ¶ 31.  Plaintiff claims that in retaliation for his complaints, Matejik informed plaintiff he had been selected for a random drug test.  See id. at ¶ 32.  Eleven days later, on April 29, 2011, Matejik issued plaintiff a notice of imminent discharge for insubordination arising from a telephone call in which plaintiff allegedly yelled at him.  See id. at ¶ 12.

Plaintiff was formally discharged on May 20, 2011 by defendant SEPTA Chief Officer John Jamison.  See id. at ¶ 34.  Plaintiff contends that the official reasons for his discharge were Matejik's allegations of insubordination and a report by two female Caucasian employees regarding inappropriate conduct by plaintiff.  See id. at ¶¶ 34-35.  Plaintiff denies those allegations.  See id. at ¶ 36.

Plaintiff appealed his termination in accordance with SEPTA's employment procedures and on September 26, 2011 a hearing was held.  See id. at ¶¶ 40, 41.  Plaintiff was found to have been terminated without just cause and SEPTA was ordered to reinstate him.  See id.  Plaintiff alleges that SEPTA retaliated against him after that ruling by delaying his reinstatement and payment of his back wages.  See id. at ¶ 43.

On July 24, 2012, plaintiff dual-filed a complaint with the Equal Employment Opportunity Commission (EEOC) and Pennsylvania Human Rights Commission (PHRC) alleging race discrimination and retaliatory discharge against defendants.  See Dkt. No. 22.  Plaintiff received a right-to-sue letter from the EEOC and on October 22, 2013, plaintiff filed this suit.  See Dkt. No. 1.  On February 2, 2014, plaintiff filed his first amended complaint

alleging that defendants retaliated and discriminated against him when they applied SEPTA's disciplinary policy in a racially discriminatory manner and subjected him to a hostile work environment.  See Dkt. No. 8.  On June 18, 2014, I dismissed the race discrimination claims set forth in counts I, III, V and the punitive damages claims from plaintiff's first amended complaint with leave to amend for failure to state a claim under Rule 12(b)(6).  See Dkt. No. 13.

On July 11, 2014, plaintiff filed his second amended complaint which added to his previous claims of race discrimination a wage discrimination claim under Title VII, the PHRA and § 1983.  See Dkt. No. 15 at ¶¶ 28-29.  On July 25, 2014, defendants answered plaintiff's second amended complaint.  See Dkt. No. 17.  In their answer, defendants asserted the affirmative defense of exhaustion of administrative remedies.  See id. at 9.  Defendants moved to dismiss counts I, III, V and claims for punitive damages from plaintiff's second amended complaint on July 25, 2014.  See Dkt. No. 16.  On October 7, 2014, I ordered defendants to brief their affirmative defense of exhaustion of administrative remedies and gave plaintiff the opportunity to respond.  See Dkt. No. 20.  Defendants filed a supplemental brief supporting their argument that plaintiff has failed to exhaust his administrative remedies regarding his wage discrimination claim, but plaintiff did not respond.  See Dkt. Nos. 21, 22.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual

3

allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678. The Court also set forth a two-part analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

## DISCUSSION

In his second amended complaint, plaintiff asserts three distinct claims of unlawful race discrimination, with each claim brought under Title VII, the PHRA and § 1983 in counts I, III

4

and V respectively.  First, plaintiff claims defendants unlawfully discriminated against him when they discharged him for insubordination but failed to discipline the insubordinate acts of similarly situated Caucasian SEPTA employees.  See Dkt. No. 15 at ¶ 11.  Second, plaintiff contends that Matejik subjected him to a hostile work environment.  See id. at ¶¶ 26-27.  Third, plaintiff claims that SEPTA subjected him to racially motivated wage discrimination.  See id. at ¶¶ 28-29.  In count V, plaintiff also asserts a claim for retaliation under § 1983.  See id. at ¶¶ 62-69.

I.      **Discriminatory Discipline Claim**

In order to make out a prima facie case of employment discrimination based on the discriminatory application of SEPTA's disciplinary rules, plaintiff must show: (1) membership in a protected class; (2) qualification for the position sought; (3) an adverse employment action; and (4) circumstances that give rise to an inference of unlawful discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  The McDonell Douglas framework is also applied to claims of race discrimination arising under the PHRA and § 1983.  See Slagle v. Cnty. of Clarion, 435 F.3d 262, 265 n.5 (3d Cir. 2006) (analyzing claims under the PHRA with the same standard as Title VII unless specific language requires the claims to be treated differently); Thomas v. City of Phila., No. 13-4282, 2014 WL 3411142, at *2 (3d Cir. July 15, 2014) (finding that the plaintiff failed to state a § 1983 claim for employment discrimination under McDonnell Douglas, where the district court had improperly skipped the McDonnell Douglas analysis and prematurely held that Monell precluded the plaintiff's § 1983 claims); Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997) ("Our application of the McDonnell Douglas–Burdine framework is applicable to [plaintiff]'s allegation of racial discrimination under 42 U.S.C. §§ 1981 and 1983.").

"To survive a motion to dismiss, [plaintiff] d[oes] not need to establish the elements of a prima facie case; [ ]he merely need[s] to put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." Groeber v. Friedman & Schuman, P.C., 555 F. App'x 133, 135 (3d Cir. 2014) (citations omitted).  Under the fourth prong of the McDonnell Douglas test, an inference of unlawful discrimination arises when "similarly situated persons not within the protected class were treated more favorably [than plaintiff]." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 n.7 (3d Cir. 2003).  "While similarly situated does not mean identically situated, the plaintiff must nevertheless be similar in all relevant respects."  Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222-23 (3d Cir. 2009) (citation omitted).  In workplace discrimination, relevant factors include "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  Id., quoting Radue v. Kimberly-Clark Corp. 219 F.3d 612, 617 (7th Cir. 2000); see also Blackshear v. Verizon, No. 11-1036, 2011 WL 5116912, at *2 (E.D. Pa. Oct. 27, 2011) (dismissing the plaintiff's Title VII employment discrimination claim where the plaintiff failed to plead that comparator employees had the same supervisor).

   I find that plaintiff has not satisfied the fourth prong of the McDonnell Douglas test with respect to his discriminatory discipline claim.  Plaintiff has failed to plead sufficient factual circumstances from which a claim of unlawful discrimination based on the discriminatory application of SEPTA's disciplinary rules may be inferred.  Plaintiff has not cured the defects that led me to dismiss his claim of discriminatory enforcement of SEPTA's disciplinary rules asserted in his first amended complaint.  See Dkt. No. 13.  Plaintiff still asserts that three

6

comparator Caucasian employees were insubordinate to their supervisor and were not disciplined for that conduct, namely James Johnson, Jennifer Costello and Wayne McFaye.  Plaintiff himself was the supervisor of both James Johnson and Jennifer Costello.  Thus, these employees were not similarly situated to plaintiff because they were his own subordinates.  Johnson and Costello's alleged insubordination was not directed against Matejik, but against plaintiff himself. See Dkt. No. 15 at ¶¶ 13-21, 24-25.  Additionally, plaintiff's third comparator, McFaye, was not supervised by plaintiff's supervisor Matejik but rather by a different supervisor named Tom Rowbottom.  See id. at ¶ 22.  Plaintiff also alleges no facts related to the circumstances of McFaye's allegedly insubordinate conduct towards Rowbottom.  See id. at ¶¶ 21-22.  Thus, based on plaintiff's pleadings, McFaye was not similarly situated to plaintiff.  Without similarly situated comparators, I cannot infer from plaintiff's pleadings that members of a non-protected class were treated more favorably than plaintiff.  Thus, I find that plaintiff has not stated a prima facie claim of employment discrimination in the application of SEPTA's disciplinary rules under Title VII, the PHRA and § 1983 and will dismiss his claim.

**II.     Hostile Work Environment Claim**

I also find that plaintiff has not pled sufficient facts to sustain his claim that defendant Matejik created a racially motivated hostile work environment.  To plead a prima facie claim for hostile work environment, plaintiff must show: "(1) that [ ]he suffered intentional discrimination because of his race; (2) that the discrimination was pervasive and regular; (3) that the discrimination detrimentally affected plaintiff; (4) that the discrimination would have detrimentally affected a reasonable person of the same race as plaintiff, in like position; and (5) a basis for respondeat superior liability." Page v. City of Pittsburgh, 114 F. App'x 52, 54 (3d Cir. 2004) (upholding dismissal of hostile work environment claims where all of the harassment

allegedly occurred during one month and was not sufficiently severe); see also Pollock v. City of Phila., No. 06-4089, 2008 WL 3457043, at *9 n.5 (E.D. Pa. Aug. 8, 2008) (prima facie claims of hostile work environment are not analyzed under the McDonnell Douglas framework) aff'd, 403 F. App'x 664 (3d Cir. 2010).  In evaluating the elements of a hostile work environment claim, I consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Sherrod v. Phila. Gas Works, 57 F. App'x 68, 75 (3d Cir. 2003).

"Hostile work environment claims are subject to the same standards under Title VII, the PHRA, and [an] Equal Protection Clause" claim brought pursuant to § 1983.  Cruz-Smith v. Sinclair, No. 10-3609, 2011 WL 3652462, at *4 (E.D. Pa. Aug. 19, 2011), citing Woodard v. PHB Die Casting, 255 F. App'x 608, 609 (3d Cir. 2007) (Title VII and the PHRA) and Pollock v. City of Phila., No. 06–4089, 2008 WL 3457043, at *8–9 (E.D. Pa. Aug. 8, 2008) (Title VII and the Equal Protection Clause pursuant to § 1983); see also Sherrod, 57 F. App'x at 75 (the hostile work environment "analysis is the same whether under Title VII, Section 1981 or the PHRA.").

Plaintiff alleges that Matejik would "yell, raise his voice and snap at Plaintiff" but not at Caucasian employees.  See Dkt. No. 15 at ¶ 27.  He alleges no specific facts regarding Matejik's comments or the context of those comments.  Plaintiff does not claim that this allegedly discriminatory behavior was pervasive or regular, how the alleged discrimination affected him or how Matejik's conduct would affect a reasonable person of the same race in a like position. Further, plaintiff has not alleged a basis for respondeat superior liability for Matejik's conduct. Absent any allegations of a single specific instance of Matejik's allegedly discriminatory

behavior, let alone a pervasive or regular set of instances, I find that plaintiff has not stated a claim for hostile work environment under Title VII, the PHRA and § 1983 and will dismiss his claim.

### III.     Discriminatory Compensation Claim

Plaintiff asserts for the first time in his second amended complaint that SEPTA engaged in racially motivated wage discrimination by paying him less than Caucasian employees in the same position and with less work experience. Plaintiff brings this claim under Title VII, the PHRA and § 1983.

#### A.     Title VII and the PHRA

Defendants argue that plaintiff "has not exhausted his administrative remedies and cannot proceed with his racially disparate compensation claim." Dkt. No. 21 at 2. "As a prerequisite to bringing suit under Title VII and the PHRA, a plaintiff must first file a timely administrative charge of discrimination with the appropriate agencies." Lawton v. Sunoco, Inc., No. 01-2784, 2002 WL 1585582, at *4 (E.D. Pa. July 17, 2002) aff'd, 65 F. App'x 874 (3d Cir. 2003). "This exhaustion requirement is designed to provide sufficient notice to the defendant concerning the charges and obtain voluntary compliance without resort to litigation." Fucci v. Graduate Hosp., 969 F. Supp. 310, 315 (E.D. Pa. 1997).

A threshold question is the standard under which I should consider the defendants' motion to dismiss plaintiff's wage discrimination claims for failure to exhaust administrative remedies. The Court of Appeals has found that the "[t]imeliness of exhaustion requirements are best resolved under Rule 12(b)(6) covering motions to dismiss for failure to state a claim." Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997). "In Title VII actions, failure to exhaust administrative remedies is an affirmative defense [and thus] the defendant bears the burden of

9

pleading and proving that the plaintiff has failed to exhaust administrative remedies." Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).

"In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, any exhibits attached to the complaint, and matters of public record." Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 780 (W.D. Pa. 2000), citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994). Once an exhaustion inquiry goes "beyond the face of the pleadings, the district court should [treat the issue] in a manner consistent with Rule 56 for summary judgment." Robinson, 107 F.3d at 1022; see also Fed. R. Civ. P. 12(d). However, "[t]he exception to this general rule is when [the] defendant attaches to the motion to dismiss an 'undisputedly authentic document' that is 'integral to or explicitly relied upon in the complaint' . . . At that point, the court may consider such a document without turning a motion to dismiss into a motion for summary judgment." Zielinski v. Whitehall Manor, Inc., 899 F. Supp. 2d 344, 351 (E.D. Pa. 2012), citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). As a result, I am required to test defendants' exhaustion defense either under Rule 12(b)(6) or Rule 56 as appropriate in the context of the action. See Anjelino v. N.Y. Times Co., 200 F.3d 73, 87-88 (3d Cir. 1999).

I may properly consider EEOC filings in the context of a motion to dismiss for failure to exhaust administrative remedies without converting the motion into one for summary judgment. See Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000) ("we may consider the EEOC charge and related EEOC documents, including the letter from the EEOC summarizing its investigation, the right to sue letter, and the intake questionnaire, either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record, without converting this motion to one summary

judgment") aff'd, 276 F.3d 579 (3d Cir. 2001); Ruddy v. U.S. Postal Serv., 455 F. App'x 279, 283 (3d Cir. 2011) (finding that the district court properly relied upon EEOC file attached by defendants in considering motion to dismiss); Yang v. Astrazeneca, No. 04-4626, 2005 WL 327539, at *3 (E.D. Pa. Feb. 10, 2005).

Here, plaintiff alleges that he exhausted administrative remedies by filing a charge with the PHRC and receiving a right-to-sue notice from the EEOC.[1]  See Dkt. No. 15 at ¶ 5.  Plaintiff attached his right-to-sue notice to his second amended complaint.  See Dkt. No. 15, Ex. A. Defendants attached plaintiff's charge in support of their motion to dismiss.  See Dkt. No. 22. The charge is integral to plaintiff's wage discrimination claim since it is an administrative prerequisite to filing suit and is referenced in his complaint.  Further, it is a public document of uncontested authenticity.  I will consider the charge on defendants' motion to dismiss without converting the motion to one for summary judgment, since "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Pension, 998 F.2d at 1196.  Plaintiff has also had the opportunity to respond to defendant's submission of the charge in support of the motion to dismiss.  See Dkt. No. 20; Pension, 998 F.2d at 1196 ("The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond.").  Thus, as a threshold matter, I find that it is appropriate to consider defendants' motion to dismiss plaintiff's wage discrimination claims under Rule 12(b)(6).

Now I will address the issue of whether defendants have carried their burden of showing that plaintiff has failed to exhaust administrative remedies regarding his wage discrimination

---

[1]   Plaintiff's charge (Dkt. No. 22) reveals it was dual-filed with the EEOC and PHRC.

claim.  "[A] Title VII plaintiff cannot bring claims in a civil lawsuit that were not first included in an EEOC charge and exhausted at the administrative level." Economos v. Scotts Co., No. 05-271, 2006 WL 3386646, at *6 n.4 (E.D. Pa. Nov. 21, 2006).  "The relevant test in determining whether [plaintiff] was required to exhaust [ ] administrative remedies, therefore, is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996).  Thus, "[a] Title VII plaintiff may include in a civil complaint claims of discrimination similar or reasonably related to those alleged in the EEOC charge." Fucci, 969 F. Supp. at 315.  Typically, wage discrimination claims that are not specifically pled in an EEOC charge are not sufficiently related to other allegations of employment discrimination to bring them within the scope of the charge.  See Lawton, 2002 WL 1585582, at *4 (finding the plaintiff failed to exhaust administrative remedies for wage discrimination, hostile work environment, disparate impact and retaliation claims where the EEOC charge only included a claim of failure to promote); Economos, 2006 WL 3386646, at *6 n.4 (finding that where the plaintiff's EEOC charge and right-to-sue notice contained no reference to wage discrimination that the plaintiff had failed to exhaust administrative remedies regarding his wage discrimination claims).

Plaintiff's wage discrimination claim asserted in his second amended complaint clearly falls outside of the scope of his EEOC charge.  Plaintiff's EEOC charge contains two claims.  First, plaintiff claims that defendants engaged in race discrimination by disparately applying SEPTA disciplinary rules.  See Dkt. No. 22.  Second, plaintiff claims that defendants retaliated against him when they discharged him following his complaints of race discrimination.  Id.  These claims are not reasonably related to plaintiff's newly asserted claim of wage discrimination.  Plaintiff's wage discrimination claim is a distinct legal theory, uses different

comparators than his other discrimination claims and is not asserted against defendants Matejik and Jamison. See Dkt. No. 15 at ¶¶ 28, 29. All of the evidence attached to the complaint and motion to dismiss indicates that plaintiff has failed to exhaust administrative remedies regarding his wage discrimination claim. Thus, I find that defendants have carried their burden of showing that plaintiff failed to exhaust administrative remedies regarding his wage discrimination claim and will dismiss plaintiff's wage discrimination claim under Title VII and the PHRA. Out of an abundance of caution, however, I will dismiss with leave to amend provided that plaintiff can allege facts supporting the exhaustion of administrative remedies regarding his wage discrimination claim.[2]

### B.     § 1983

Plaintiff also brings his wage discrimination claim against SEPTA under § 1983. Plaintiff does not assert his wage discrimination claim against defendants Matejik and Jamison. See Dkt. No. 15 at ¶ 28. "Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court." Porter v. Nussle, 534 U.S. 516, 523 (2002). Thus, "failure to exhaust [ ] administrative remedies under Title VII has no effect on [a plaintiff's] civil rights and tort law claims." Mieczkowski v. York City Sch.

---

[2] Federal Rule of Civil Procedure 15 provides that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The decision to grant or deny leave to amend is within my discretion, but denial of leave to amend must rest upon grounds such as undue delay, bad faith, dilatory motive, prejudice, or futility. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997); see also Chalfont v. U.S. Electrodes, No. 10-2929, 2010 WL 5341846, at *7 (E.D. Pa. Dec. 28, 2010) (dismissing the plaintiff's employment discrimination claims with leave to amend "provided that he can allege facts to support his assertion . . . that he properly exhausted his administrative remedies."); Sindram v. Fox, No. 07-0222, 2008 WL 2996047, at *5 (E.D. Pa. Aug. 5, 2008) (dismissing plaintiff's FOIA claim with leave to amend to provide "specific evidence of his exhaustion of administrative remedies").

Dist., No. 07- 1102, 2007 WL 4224382, at *3 (M.D. Pa. Nov. 28, 2007).  Plaintiff's wage discrimination claim against SEPTA under § 1983, however, fails for other reasons.

To establish his § 1983 claim against SEPTA for wage discrimination, plaintiff must allege that SEPTA "implements or executes a policy, regulation or decision officially adopted by [SEPTA] or informally adopted by custom" that violates his constitutional rights.  Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 659 (1978).  Plaintiff's allegation must clearly "identify [the] custom or policy, and specify what exactly that custom or policy was." Washington v. City of Phila., No. 11-3275, 2012 WL 85480, at *5-6 (E.D. Pa. Jan. 11, 2012).

Plaintiff has made no allegation that SEPTA has a policy or custom of engaging in race-based wage discrimination.  Rather, plaintiff only alleges that he was individually paid less than similarly situated Caucasian employees.  Plaintiff does not allege, let alone plead sufficient facts to make a plausible claim, that his allegedly disparate pay was the result of a SEPTA policy or custom of wage discrimination.  Thus, plaintiff has failed to state a claim against SEPTA for wage discrimination under § 1983.  Since this is the first time plaintiff has stated a claim for wage discrimination, I will grant plaintiff leave to amend his complaint provided that he is able to allege sufficient facts that SEPTA has an unconstitutional policy or custom of wage discrimination.

**IV.    Retaliation under § 1983**

In my previous opinion dismissing counts I, II and V from plaintiff's first amended complaint, I found that plaintiff could not assert a stand-alone claim for retaliation under § 1983 absent a sufficiently pled constitutional violation.  See Dkt. No. 13 at 9-11.  I granted plaintiff leave to amend in order to sufficiently plead a constitutional violation upon which he could bring his § 1983 retaliation claim and dismissed plaintiff's § 1983 retaliation claim without prejudice.

Plaintiff's second amended complaint still states a claim for retaliation under § 1983 in count V.  See Dkt. No. 15 at ¶¶ 62-69.  However, plaintiff has again failed to adequately state a claim against defendants for any constitutional violation.  Thus, I will dismiss his stand-alone retaliation claim under § 1983 in accordance with my previous opinion.  See Dkt. No. 13 at 9-11.  I will again dismiss plaintiff's § 1983 retaliation claim without prejudice, however, only in so far as plaintiff can amend his complaint to sufficiently allege a constitutional violation arising from wage discrimination in accordance with my findings above.

**V.    Punitive Damages**

Plaintiff seeks punitive damages from defendants Matejik and Jamison in their individual capacities under Title VII, the PHRA and § 1987.  "A plaintiff in a Title VII action may recover punitive damages for intentional discrimination where 'the complaining party demonstrates that the respondent engaged in . . . discriminatory practices with malice or with reckless indifference to . . . federally protected rights.'"  Mangan v. Commw. Med. Coll., No. 11-2277, 2012 WL 2018270, at *3 (M.D. Pa. June 5, 2012), citing Le v. Univ. of Pa., 321 F.3d 403, 409 n.4 (3d Cir. 2003).  "Punitive damages are available in actions brought pursuant to 42 U.S.C. § 1983 not only where there was a malicious intent or evil motive, but also where the defendants acted with a 'reckless or callous disregard of, or indifference to, the rights and safety of others.'"  Bennis v. Gable, 823 F.2d 723, 734 (3d Cir. 1987), citing Smith v. Wade, 461 U.S. 30, 33, 56 (1983).  Thus, in order to recover punitive damages plaintiff must show that defendants' "conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief."  Cochetti v. Desmond, 572 F.2d 102, 106 (3d Cir. 1978).  Further, "[t]he Pennsylvania Supreme Court is unambiguous in its instruction that punitive damages under the PHRA are not

permitted." Mangan, 2012 WL 2018270, at *3, citing Hoy v. Angelone, 554 Pa. 134, 720 A.2d 745 (1998).

Plaintiff has not pled sufficient facts against defendants Matejik or Jamison to give rise to plausible claims for punitive damages. Plaintiff's bare-bones allegation that Matejik would "yell, raise his voice and snap at Plaintiff" does not support a claim of intentional discrimination let alone malice or reckless indifference to federally protected rights. Again, plaintiff has inadequately pled his discrimination claims and thus those claims do not give rise to claims for punitive damages. Plaintiff pleads no facts that would give rise to an inference of malice or reckless indifference with regard to Jamison, but rather simply alleges that Jamison's actions were retaliatory. As I have previously found, plaintiff's retaliation claims alone do not contain allegations of conduct that justify anything more than an award of compensatory damages or injunctive relief. See Dkt. No. 13 at 11-12. Thus, I will dismiss plaintiff's claims for punitive damages.

## CONCLUSION

For the reasons set forth above, I will grant defendants' motion to dismiss counts I, III, V and plaintiff's claims for punitive damages from plaintiff's second amended complaint. I will dismiss plaintiff's wage discrimination claim under Title VII, the PHRA and § 1983 with leave to amend and plaintiff's § 1983 retaliation claim with leave to amend provided that plaintiff can sufficiently plead a constitutional violation arising from his wage discrimination claim.

An appropriate Order follows.