IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT BRADDOCK | : | CIVIL ACTION |
| | : | NO. 13-6171 |
| v. | : | |
| | : | |
| SEPTA, et al. | : | |
| | : | |
| O'NEILL, J. | : | April 21, 2015 |

**<u>MEMORANDUM</u>**

Presently before me are defendants Southeastern Pennsylvania Transportation Authority (SEPTA), Albert Matejik and John Jamison's motion for summary judgment on plaintiff Robert Braddock's retaliation claims under Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act (PHRA) (Dkt. No. 27), Braddock's response (Dkt. No. 31) and defendants' reply (Dkt. No. 32). For the following reasons I will deny defendants' motion for summary judgment.

**BACKGROUND**

Braddock is an African-American male who has worked at SEPTA for over thirty-two years and is employed as a Yard Master. See Dkt. No. 15 at ¶ 9. Defendants do not dispute that Braddock's supervisor Albert Matejik decided to terminate Braddock's employment with SEPTA. See Dkt. No. 27-1 at ECF 2 (referring to decision on April 25, 2011), citing Dkt. No. 27-2, Ex. B. at ECF 5-6 (referring to Notice of Imminent Discharge on April 29, 2011). That decision was upheld by SEPTA Chief Officer John Jamison on May 17, 2011. See Dkt. No. 27-2, Ex. B. at ECF 5-6. Thereafter, a post-determination hearing was held and Braddock was reinstated based upon a finding that he was not terminated for "just cause." Id., Ex. D. at ECF 29-35.

Prior to his termination, on April 19, 2011, Braddock attempted to complain over the phone to Matejik that he was being racially discriminated against in the workplace. See Dkt. No. 31-4, Ex. A at ¶ 3. Matejik testified that during the April 19, 2011 phone call Braddock called Matejik a racist, stated that Matejik was out to get him, that Braddock was working in an unsafe environment and that Braddock had not had the same problems with his past supervisors. See Dkt. No. 31-4, Ex. B at 75:22-76:6; id. at 106:13-107:12. Braddock testified that he did not call Matejik a racist. See id., Ex. B at 243; id., Ex. A at ¶ 3. However, SEPTA's post-determination hearing officer determined that "Matejik was affected by the fact that he was called a racist; and the events were elevated to a higher level." Id., Ex. C at 6. Matejik testified that he understood Braddock's allegations during the April 19, 2011 phone call as a complaint of racial discrimination against Matejik himself and that one of the reasons he terminated Braddock was because Braddock called him a racist during the call. See id., Ex. B at 78:20-79:1; id. at 106:13-107:12; id. at 112:4-12.

Braddock states in his declaration that on April 20, 2011, he went to SEPTA's EEO office to complain that Matejik was treating him differently than Caucasian Yard Masters. See id., Ex. A at ¶ 5. Braddock states he filled out a complaint form, gave it to Anthony Miller at the EEO office and related to Miller that Matejik constantly harassed Braddock at work but did not harass Caucasian Yard Masters. See id. at ¶ 6. Braddock also states that Miller told him that there was nothing Miller could do for him, that he should make his complaints with the federal EEOC and that Miller kept his completed SEPTA EEO complaint form. See id. at ¶ 5-7. Matejik has testified that before he terminated Braddock he talked to SEPTA's EEO office regarding Braddock's complaint of race discrimination against him. See id., Ex. B at 111:4-112:12.

**STANDARD OF REVIEW**

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23. If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the

movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

Defendants contend they are entitled to summary judgment on Braddock's retaliation claims because there is no issue of material fact regarding whether Braddock engaged in protected conduct and that therefore Braddock cannot sustain a prima facie claim of retaliation under Title VII and the PHRA.  "[I]n order to establish a *prima facie* case of illegal retaliation . . . a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."  Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004) (internal citations omitted).  "[T]he same standards and decisional law apply to retaliation claims under both" Title VII and the PHRA.  Cerol v. Temple Univ. of Commonw. Sys. of Higher Educ., 303 F. App'x 87, 88 (3d Cir. 2008).  "Protected activity under Title VII includes opposition to unlawful discrimination under Title VII" and only "protect[s] an employee who complains about employer conduct he or she reasonably believes to be an unlawful employment practice whether or not it is such . . . when the employee's belief is objectively reasonable."  Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 324 (3d Cir. 2008) (internal citations omitted).  "We do not require a formal letter of complaint to an employer or the EEOC as the only acceptable indicia of the requisite protected conduct under the ADEA . . . acceptable forms of protected activity under Title VII's analogous opposition clause include formal charges of discrimination as well as informal protests of discriminatory employment practices, including making complaints to

management . . . ." Barber v. CSX Distribution Servs., 68 F.3d 694, 702 (3d Cir. 1995) (internal citations omitted), citing Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990).

Defendants contend that there is no evidence in the record that Braddock made a complaint of racial discrimination prior to his termination and therefore did not engage in protected activity. First, defendants contend that because Braddock testified he did not call Matejik a racist during their April 19, 2011 phone call, there is no disputed issue of material fact with respect to whether Braddock complained of racial discrimination to Matejik on the call and therefore no issue of disputed fact that Braddock engaged in protected activity during the call. It is true that Braddock has testified, stated and conceded as an undisputed fact that he did not call Matejik a racist on the April 19, 2011 phone call.[1] See Dkt. No. 31-4, Ex. A at ¶ 3; Dkt. No. 31-1 at ¶ 18. Of course, Matejik clearly believed Braddock alleged he was a racist during their phone call on April 19, 2011. See Dkt. No. 31-4, Ex. B at 106:13-107:12; id. at 112:4-12. Matejik also testified this belief was at least one reason for Matejik's decision to terminate Braddock.[2] See id. at 78:20-79:1.

Whether there is a genuine dispute of material fact, however, regarding Braddock's attempt to complain to Matejik about racial discrimination against him by other is another matter. Plaintiff states that he had been told that he should "watch his back" because other

---

[1] Defendants argue that Braddock's declaration filed in support of his opposition to summary judgment (Dkt. No. 31-4, Ex. A) is a "sham affidavit" because they contend that he contradicted these statements in his complaint. See Dkt. No. 32 at ECF 3-4. However, Braddock's allegation in his second amended complaint that he "complained that Albert Matejik was a racist" refers to the previous paragraph discussing that Braddock reported "to SEPTA's EEO that his supervisor was subjecting him to discrimination and hostile work environment because of his race" rather than to the phone call of April 19, 2011. See Dkt. No. 15 at ¶¶ 31-32. Indeed, Braddock has been consistent in denying he called Matejik a racist on the phone call.

[2] The issue of whether Matejik's subjective belief that Braddock was complaining of discrimination on April 19, 2011 alone is sufficient to satisfy the protected activity element of Braddock's prima facie claim for retaliation is an interesting question but one that I need not reach.

employees were "trying to get [him]" which he interpreted was due to his race. See Dkt. No. 31-4, Ex. A at ¶ 3.  Plaintiff states that on the phone call, he attempted to complain to Matejik that he was the only minority in his department and that he was being treated differently than other Yard Masters.  See Dkt. No. 31-4, Ex. A at ¶ 3.  However, Braddock contends he was cut off by Matejik, who accused him of calling Matejik a racist.  See id.  Thus, defendants concede that at the very least "Braddock's undisputed testimony establishes that the only reason [for the call] was to inform Mr. Matejik of . . . Dixon and other union officials telling him to watch his back because he was the only minority yardmaster."[3]  Dkt. No. 27 at ECF 11.

Defendants contend generally that Braddock's allegations are too vague, equivocal, self-serving and not objectively reasonable to constitute protected activity under Title VII.  See Dkt. No. 27 at 8-9, Dkt. No. 32 at ECF 6-7.  Regarding equivocality, the evidence appears to indicate Braddock did not just "just objectively reported [racism's] existence or attempted to serve as an intermediary" but rather clearly "stood in opposition to it."  Moore v. City of Phila., 461 F.3d 331, 350 (3d Cir. 2006), as amended (Sept. 13, 2006).  Regarding reasonableness, I "need only determine whether a reasonable person in [Braddock's] circumstances could conclude that [he was] suffering discrimination made unlawful by Title VII."  Id. at 344.  Indeed, in Moore the Court of Appeals cited evidence of a statement that a white supervisor was "going to get" a black police officer as grounds for the reasonable belief black officers were being discriminated against.  Id. at 345.  Similarly, Braddock states he attempted to tell Matejik that Mr. Dixon and Union leaders had informed him "they," presumably SEPTA employees, were "trying to get [him]" because he was the only African-American Yard Master.  See Dkt. No. 31-4, Ex. A at ¶ 3.  Braddock believed that he was being treated differently than Caucasian employees because of

---

[3] For at least this reason I cannot conclude, as defendants' contend, that Braddock's declaration is a "sham affidavit."  See Dkt. No. 32.

disciplinary charges being brought against him related to an incident at a female employee yard trailer.  See Dkt. No. 31-4, Ex. A at ¶ 3.

I need not decide defendants' motion on the facts surrounding the April 19, 2011 call, however, because defendants fall short in their contention that there are no undisputed issues of material fact regarding Braddock's complaint of racial discrimination by Matejik to SEPTA's EEO office prior to his termination.  See Dkt. No. 27 at ECF 9 n.4.  Braddock has submitted a sworn declaration in support of his opposition to defendants' summary judgment motion that on April 20, 2011 he complained to SEPTA's EEO office of racial discrimination by Matejik and submitted a completed complaint against Matejik to EEO employee Anthony Miller.  See Dkt. No. 31-4, Ex. A at ¶ 5-7.  Miller's deposition has been noticed but not taken and the discovery period has not concluded.[4]  See Dkt. No. 32 at ECF 5 n.4.  Defendants have filed a declaration by SEPTA EEO director Lorrain McKenzie stating that the EEO has no record of a complaint by Braddock before the date of his termination.  See Dkt. No. 27-2, Ex. H at ¶¶ 8-10.  Matejik has also testified, however, that he had contact with SEPTA's EEO office and discussed Braddock's complaints of racial discrimination against him prior to Braddock's termination.  See Dkt. No. 31-4, Ex. B at 111:4-113:8.  Braddock's declaration that on April 20, 2011 he complained to the EEO that Matejik racially discriminated against him and McKenzie's declaration that the EEO lacks any record to that effect creates a genuine disputed issue of material fact as to whether Braddock engaged in protected activity prior to his termination and thus I will deny defendants' motion for summary judgment.

---

[4] I cannot yet conclude, as defendants' contend, that Braddock's affidavit is a "sham" affidavit with relation to his EEO complaint.

**CONCLUSION**

For the reasons set forth above, I will deny defendants' motion for summary judgment on Braddock's retaliation claims under Title VII and the PHRA (Dkt. No. 27).  Thus, I will also deny Braddock's motion to strike or in the alternative to stay consideration of defendants' motion for summary judgment (Dkt. No. 28) and defendants' motion to stay discovery pending the outcome of their motion for summary judgment (Dkt. No. 30) as moot.  The parties may proceed with the remainder of discovery.  My scheduling order of January 20, 2015 (Dkt. No. 26) remains unchanged.

An appropriate Order follows.