IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT BRADDOCK | : | CIVIL ACTION |
| | : | NO. 13-6171 |
| v. | : | |
| | : | |
| SEPTA, et al. | : | |
| | : | |
| O'NEILL, J. | : | March 28, 2016 |

## MEMORANDUM

Presently before me are defendants Southeastern Pennsylvania Transportation Authority (SEPTA), Albert Matejik and John Jamison's motion for summary judgment on plaintiff Robert Braddock's retaliation claims under Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act (PHRA) (Dkt. No. 35), Braddock's response[1] (Dkt. No. 36) and defendants' reply (Dkt. No. 37). For the following reasons I will grant in part and deny in part defendants' motion.

## BACKGROUND

Braddock is an African-American male who worked at SEPTA for over thirty-two years.[2] See Dkt. No. 15 at ¶ 9. Braddock held the position of Yard Master from 2002 onward in his employment with SEPTA. See Dkt. No. 35-4 at ECF p. 2; Dkt. No. 35-5 at ECF p. 11:11-18. Prior to the events in dispute here, Braddock had a clean disciplinary record. See Dkt. No. 35-9 at ECF p. 17:7-11. On April 18, 2011, two female SEPTA employees filed internal reports regarding an April 13, 2011 incident involving Braddock at a yard trailer for female employees.[3]

---

[1]      I note that Braddock's brief was filed late. See Dkt. No. 26. I will still consider it.

[2]      Braddock voluntarily retired from SEPTA on June 1, 2014. Dkt. No. 35-4 at ECF p. 5:6-12.

[3]      The two employees alleged that they had attempted to enter the yard trailer at about 7:30 PM on April 13, 2011, were unable to gain access using keys and knocked on the

Dkt. No. 35-6 at ECF p. 28-31.  Braddock's supervisor, Matejik, received the employees' reports and asked Braddock to complete one; Braddock submitted his report on April 18, 2011.  See Dkt. No. 35-4 at ECF p. 14:10-24; Dkt. No. 35-7 at ECF p. 14.   Matejik testified that on the afternoon of April 19, 2011, he received a call from SEPTA's Personnel Assignment Office notifying him that Braddock had been selected to take a random drug and alcohol screening.  Dkt. No. 35-5 at ECF p. 4:9-21.  When Braddock arrived at work prior to his shift on April 19, he received a message to call Matejik and did so.  Id.; Dkt. No. 36-6 at ECF p. 1 ¶ 2.

The parties dispute the substance of Braddock's phone call with Matejik.  Braddock testified at his SEPTA post-determination hearing that he attempted to complain over the phone to Matejik that he was being racially discriminated against in the workplace by people other than Matejik, starting by saying, "I was the only minority."  Dkt. No. 36-6 at ECF p. 40:4-16, 43:12-47:13.  Braddock also submitted an affidavit in this case stating that he felt he was being treated differently than all the other Yard Masters and that he told Matejik, "I am the only minority in the [d]epartment" but did not say "at the time that he was the one treating me differently" because of the way Matejik was handling the complaint by the two female employees.  See id. at ECF p. 2 ¶ 3.  Finally, Braddock testified in a deposition that he told Matejik that he was "the only minority" in the department because he was receiving "constant harassment" by Matejik as "[m]ost days before work, [Braddock] was called to [Matejik's] office" even though "[t]here was no need to have conversations every day."  Dkt. No. 35-4 at ECF p. 19:23-21:24.

Matejik has a different recollection of the phone call.  Matejik testified that during the

---

door of the trailer.  Dkt. No. 35-6 at ECF p. 28-31.  They alleged that Braddock answered the door in boxers and a "tee-shirt" or "tank top" and when asked, "isn't this the girls['] bunk?" Braddock allegedly said "no one comes over here" and shut the door on them.  See id.  Braddock has disputed these allegations beyond his presence in the yard trailer.  See Dkt. No. 35-7 at ECF p. 14.

phone call Braddock called Matejik a racist and stated that Matejik was out to get him, that Braddock was working in an unsafe environment and that Braddock had not had the same problems with his past supervisors.  See Dkt. No. 36-6 at ECF p. 12:22-13:6, 17:13-18:7; Dkt. No. 35-5 at ECF p. 21:1-23.  Braddock has repeatedly denied calling Matejik a racist.  See Dkt. No. 35-4 at ECF p. 24:5-18; Dkt. No. 36-6 at ECF p. 1 ¶ 3, 31:11-12.  Matejik testified that Braddock was "yelling and screaming" at him; Braddock testified that his conversation with Matejik was "loud" because of noise in the yard.  Dkt. No. 36-6 at ECF p. 12:22-13:6, 30:19-31:10.  After this conversation, Matejik told Braddock that he had to report to SEPTA's medical department for the random drug and alcohol screening, which Braddock did.  Dkt. No. 35-4 at ECF p. 28:3-29:22.  Braddock was held off from work for some period of time due to the result of the test.  Id. at ECF p. 30:10-18.

Braddock's affidavit states that he went to SEPTA's EEO department on April 20, 2011 to make a complaint of discrimination.  See Dkt. No. 36-6 at ECF p. 3 ¶ 5.  Braddock states that he filled out a complaint form, gave it to Anthony Miller at the EEO department and related to Miller that Matejik constantly harassed Braddock at work but did not harass Caucasian Yard Masters.  See id. at ¶ 6.  Braddock also states that Miller told him that there was nothing Miller could do for him, that he should make his complaints with the federal EEOC and that Miller kept his completed SEPTA EEO complaint form.  See id. at ¶ 6-7.

Miller testified that he did not recall ever meeting with Braddock about this incident or receiving a complaint form and specifically testified that he would never tell an employee who was complaining of discrimination that there was nothing he could do for him.  Dkt. No. 35-7 at ECF p. 8:19-12:25.  SEPTA's electronic system that logs EEO complaints contains only one

complaint from Braddock: his PHRC complaint that he filed in November 2011.  Dkt. No. 35-8 at ECF p. 8:7-18, 11.

Matejik recommended Braddock's termination on April 29, 2011.  Dkt. No. 35-10 at ECF p. 2.  On May 17, 2011, SEPTA's Chief Mechanical Officer Jamison held a determination hearing which Braddock attended and on May 20, 2011, Jamison upheld the termination.  See id. at ECF p. 6-7; Dkt. No. 35-6 at ECF p. 13:9-21:22.  Braddock appealed, and after a post-determination hearing, Braddock was reinstated based upon a finding that he was not terminated for "just cause."[4]  See Dkt. No. 36-6 at ECF p. 53.

Braddock brings a Title VII retaliation claim against SEPTA and PHRA retaliation claims against all defendants.  I denied defendants' previous motion for summary judgment on Braddock's retaliation claims, which was filed before discovery had been completed and depositions of relevant actors had been taken.  The parties have now completed discovery.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23.  If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is

---

[4]     The hearing officer reinstated Braddock based on his findings that Braddock's insubordination charge was unsupported by any evidence and that Braddock's conduct at the yard trailer incident did not rise to a level that would justify dismissal.  Dkt. No. 36-6 at ECF p. 53.

4

genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." Id.  A fact is "material" if it might affect the outcome of the case under governing law.

Id.

> To establish "that a fact cannot be or is genuinely disputed," a party must:
>
>> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in

its favor" in order to overcome a summary judgment motion and cannot survive by relying on

unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W.

Chester, 891 F.2d 458, 460 (3d Cir. 1989).  The "existence of disputed issues of material fact

should be ascertained by resolving all inferences, doubts and issues of credibility against" the

movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation

marks omitted).

## **DISCUSSION**

Defendants seek summary judgment on five grounds.  First, defendants contend that

Braddock did not engage in protected conduct as required to prove a prima facie case of

retaliation under both Title VII and the PHRA.  Next, defendants argue that even if Braddock

engaged in protected activity, he cannot establish that his protected activity was a but-for cause

of his termination.  Defendants maintain that even if Braddock can establish a prima facie case,

he cannot show that SEPTA's legitimate non-discriminatory reason for his termination was

pretext.  Additionally, defendants contend that the PHRA claims against Matejik and Jamison individually should be dismissed.  Finally, defendants argue that Braddock's claim for back pay and several other forms of damages cannot survive summary judgment because he was fully paid what he was owed upon his reinstatement with SEPTA.

## I.      Prima Facie Case

"[I]n order to establish a prima facie case of illegal retaliation . . . a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."  Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004) (internal citations omitted).  "[T]he same standards and decisional law apply to retaliation claims under both" Title VII and the PHRA.  Cerol v. Temple Univ. of Commonw. Sys. of Higher Educ., 303 F. App'x 87, 88 (3d Cir. 2008).

### A.      Protected Activity

Defendants first argue that Braddock has not shown that he engaged in protected activity. Braddock responds that he engaged in two forms of protected conduct that led defendants to retaliate against him by terminating him.  First, Braddock argues that he engaged in protected conduct when he complained of discrimination to Matejik over the phone.  Second, Braddock argues that he engaged in protected conduct when he filed a complaint of discrimination with SEPTA's EEO department.  Braddock maintains that genuine issues of material fact remain to be proven on both of these grounds.

"Protected activity under Title VII includes opposition to unlawful discrimination under Title VII" and "protect[s] an employee who complains about employer conduct he or she reasonably believes to be an unlawful employment practice whether or not it is such . . . when

the employee's belief is objectively reasonable." Wilkerson v. New Media Tech. Charter Sch.

Inc., 522 F.3d 315, 324 (3d Cir. 2008) (internal citations omitted). "[A]cceptable forms of

protected activity under Title VII's . . . opposition clause include formal charges of

discrimination as well as informal protests of discriminatory employment practices, including

making complaints to management . . . ." Barber v. CSX Distribution Servs., 68 F.3d 694, 702

(3d Cir. 1995) (internal citations omitted), citing Sumner v. U.S. Postal Serv., 899 F.2d 203, 209

(2d Cir. 1990).

Defendants maintain that Braddock's phone call with Matejik did not constitute protected

activity because Braddock lacked an objectively reasonable belief that he was opposing unlawful

conduct. They argue that Braddock has been inconsistent in testifying about why he made a

complaint to Matejik and that Braddock's testimony regarding Matejik frequently calling him to

his office is factually unsupported. Braddock does not address these inconsistencies, but he

argues that regardless, "[d]efendants also perceived [p]laintiff to have engaged in protected

activities when he allegedly referred to Matejik as a 'racist.'" See Dkt. No. 36 at ECF p. 6.

Although Braddock does not provide the Court with authority to support his argument

about defendants' perceptions of his actions, the Court of Appeals has recognized a perception

theory for retaliation claims by interpreting the plain language of the ADA and ADEA anti-

retaliation provisions, which are nearly identical to Title VII's anti-retaliation provision. See

Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 565 (3d Cir. 2002) (finding that "it does not

matter whether the factual basis for the employer's discriminatory animus was correct and that,

so long as the employer's specific intent was discriminatory, the retaliation is actionable"); see

also Moore v. City of Phila., 461 F.3d 331, 344 (3d Cir. 2006), as amended (Sept. 13, 2006)

(discussing how evidence of the employer's perception "that the plaintiffs had engaged in

protected conduct when they had complained about [their supervisor's] treatment of black workers . . . support[ed] a finding that certain actions taken against the plaintiffs were animated by a retaliatory motive rather than some other reason"); Downs v. Schwartz, No. 14-630, 2015 WL 4770711, at *19 (E.D. Pa. Aug. 12, 2015) (finding that even if the plaintiff denied making a complaint of discrimination, the plaintiff could "establish the first element of a prima facie case of retaliation under the perception theory").

Braddock essentially argues that he can show "that he was fired because [his employer] thought that he was engaged in protected activity, even if he actually was not."  See Fogleman, 283 F.3d at 565.  Under this theory, the analysis does not focus on Braddock's own reasons for or perspectives about his statements.  Instead, the relevant perspective is Matejik's understanding of Braddock's call.  Matejik's account of the phone call has been consistent.  He wrote in Braddock's termination letter, testified at his termination hearing and testified in preparation for this case that he believed Braddock had called him a racist and stated that he was being treated differently than the other Yard Masters as the only black Yard Master, that his previous supervisors had not treated him this way and that he was working in an unsafe or hostile working environment.  See Dkt. No. 35-10 at ECF p. 2-3; Dkt. No. 36-6 at ECF p. 12:22-13:6; Dkt. No. 35-5 at ECF p. 21:1-14.[5]  Further, Matejik testified in Braddock's post-determination hearing

---

[5]     In his letter recommending termination, Matejik described the phone call with Braddock as one where Braddock "went on a tirade accusing me of being a racist and how [Braddock was] being subjected to a violent and hostile work environment.  [Braddock] claimed that previous supervisors never treated [him] this way, and continued to verbally assault me until I ended the conversation by stating that we would discuss this at another time."  Dkt. No. 35-10 at ECF p. 2-3.  Matejik testified at Braddock's post-determination hearing that Braddock's phone call involved him "yelling and screaming in a loud voice about me being a racist, saying I'm out to get him, he's working in an unsafe work environment.  That he didn't have this problem with his other supervisors.  He stated that he's the only black yardmaster on the property and that I'm out to get him."  Dkt. No. 36-6 at ECF p. 12:22-13:6.  At his deposition, Matejik testified that Braddock was "yelling and screaming different things about him being the only black yard

that he reported the contents of his conversation with Braddock to SEPTA's EEO department, although he did not recall talking to the EEO department at his later deposition.  See Dkt. No. 36-6 at ECF p. 22:4-23:15; Dkt. No. 35-5 at ECF p. 19:14-19.  Jamison also testified that he told Matejik to report the phone conversation with Braddock to SEPTA's EEO department.  Dkt. No. 35-6 at ECF p. 9:8-14.

Matejik testified at his deposition that he did not believe Braddock to be making a complaint in the phone call, but when asked to explain why, he said:

> I wanted to have time to sit down and talk to him to find out what he felt and what his concerns were . . . [he d]idn't seem like he was in the right frame of mind because of his outburst.  And I had other pressing issues that he had to attend[] to.  Any type of charges or allegations like that, I wanted to meet face to face with him.  I wasn't available at that time.

Dkt. No. 35-5 at ECF p. 21:15-22:6.  However, when Matejik was asked at Braddock's post-determination hearing whether he told SEPTA's EEO department that "Braddock relayed . . . his [view] that he was being discriminated against," Matejik answered yes.  Dkt. No. 36-6 at ECF p. 23:4-12.  Given Matejik's recollection of the phone call, as well as his further action in reporting the call to SEPTA's EEO department, there remains a disputed genuine issue of material fact with respect to whether Matejik perceived that Braddock was engaging in protected activity during the phone call.  On these facts, I cannot as matter of law find that Braddock did not engage in protected activity as perceived by his supervisor.

Defendants also argue that Braddock's own alleged report to SEPTA's EEO department about discrimination is factually unsupported as protected activity and urge me to disregard

---

master and felt that I was being racist towards him because I didn't treat anybody else like him.  I couldn't get a word in edgewise.  After 30 seconds or so, I told him, Bob, hold on, stop.  We are going to deal with that later . . . . He accused me of being a racist and treating him differently than other yard masters."  Dkt. No. 35-5 at ECF p. 21:1-14.

Braddock's affidavit recounting his EEO report under the sham affidavit doctrine.  See In re CitX Corp., Inc., 448 F.3d 672, 679 (3d Cir. 2006) (describing the sham affidavit doctrine as the practice of disregarding affidavits that contradict prior or later deposition testimony "in an attempt to create a genuine issue of material fact" on summary judgment).  I need not address this argument because, as I find below, Braddock cannot show that his EEO complaint was a but-for cause of his termination.

      **B.**      **But-For Cause**[6]

Defendants next argue that even if Braddock engaged in protected activity, there remain no genuine issues of material fact regarding causation between Braddock's protected activity and his termination.

      **1.**      **EEO Complaint**

Defendants contend that Braddock's alleged EEO complaint cannot be the basis for a retaliation claim because Braddock cannot show that making an EEO complaint was a but-for cause of his termination.  I agree.  Braddock does not address this argument in his response to defendants' motion.  He has not presented any evidence showing that either Matejik, Jamison or anyone else involved in his disciplinary process was aware that he had made an EEO complaint prior to his termination.  See Warfield v. SEPTA, 460 F. App'x 127, 132 (3d Cir. 2012) ("Knowledge of an employee's protected conduct is an essential element of establishing a causal connection."), citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).  If defendants did not know about Braddock's protected activity, it could not have been a but-for cause of his termination.  Therefore, I will grant summary judgment for defendants on Braddock's retaliation claim to the extent that Braddock relies on his alleged EEO complaint as the basis for his claim.

---

[6]    The parties do not dispute that Braddock suffered an adverse employment action when he was terminated.

2.      **Phone Call**

Braddock argues that he has established a causal link between his phone conversation with Matejik and his termination.  He first points to Matejik and Jamison's termination letters and a recommendation of less severe discipline by another SEPTA manager during the disciplinary process as evidence of causation.  Dkt. No. 36 at ECF p. 11.  Braddock also argues that he was denied "due process before he was subjected to imminent discharge and termination of his employment" after his phone conversation with Matejik.  Id.  Finally, Braddock relies on temporal proximity between the phone call and his termination to demonstrate a causal link.  Id. at ECF p. 12-13.

"Title VII retaliation claims must be proved according to traditional principles of but-for causation."  Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013); see also Verma v. Univ. of Pa., 533 F. App'x 115, 119 (3d Cir. 2013) (noting that the but-for causation standard applies "to the third prong" of a prima facie case analysis).  "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  Nassar, 133 S. Ct. at 2533.  Courts may consider "a broad array of evidence" in determining whether a plaintiff can establish a causal link in a retaliation claim. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000).  "Such evidence may include a temporal proximity between the protected activity and the adverse action, antagonistic behavior on the part of the employer, inconsistencies in the employer's articulated reasons for taking the adverse action, or any other evidence that supports an inference of retaliatory animus." Reaves v. Pa. State Police, 597 F. App'x 92, 97 (3d Cir. 2015).

Defendants argue that Braddock cannot establish causation because "the undisputed reason for his termination was his misuse of and behavior in the women's bunkhouse."  Dkt. No.

11

35 at ECF p. 14.  Braddock relies on four pieces of evidence to establish causation between his alleged protected activity and his termination.  First, Braddock primarily relies on Matejik and Jamison's termination letters, which "categorically noted that one of the reasons [for Braddock's termination] was the fact that he had complained that his supervisor, Matejik, subjected him to racism and [a] hostile work environment."  Dkt. No. 36 at ECF p. 12.  Matejik and Jamison's notices to Braddock describe both the incident at the female yard trailer and Braddock's phone call with Matejik as reasons for Braddock's termination.  Dkt. No. 35-10 at ECF p. 2-7.  Matejik described Braddock's conduct over the phone as "insubordinate to say the least."  Id. at ECF p. 3.  Defendants argue in response that "Braddock was charged with insubordination because of his tone towards Mr. Matejik, not because of his alleged complaint or the substance of his statement on the phone call."  Dkt. No. 37 at ECF p. 10.

Braddock next contends that he can establish causation because SEPTA's Manager of Employee Relations recommended suspension to Matejik as a lesser form of discipline for Braddock after reviewing reports about the yard trailer incident and speaking to Matejik.  See Dkt. No. 35-9 at ECF p. 15:6-13.  The Manager noted Braddock's clean prior disciplinary record as a consideration.  See id. at 17:7-11.  Braddock maintains that this is evidence of "more aggressive enforcement of [an] employer policy after an employee engaged in protected activity."  Dkt. No. 36 at ECF p. 11.  He seems to argue that although SEPTA may have somehow disciplined him after the yard trailer incident, termination was a disproportionate disciplinary measure that was taken as a reaction to his protected activity.  Defendants contend that the Manager's recommendation carried no weight because his role was to provide advice about potential discipline, not make disciplinary decisions or administer discipline.  See Dkt. No. 35-9 at ECF p. 16:19-24.

Braddock also maintains that he can establish but-for causation because "[d]efendants denied [p]laintiff due process before he was subjected to imminent discharge and termination of his employment." Dkt. No. 36 at ECF p. 11. Braddock contends that defendants' reliance on written reports, including his own report, and conversations with the two women who accused him of misconduct while investigating the incident is evidence of causation. Id. at ECF p. 11-12. However, Jamison also interviewed Braddock before making the ultimate decision to terminate him upon Matejik's recommendation. See Dkt. No. 35-4 at ECF p. 22:3-24:20. Additionally, Matejik testified that he wanted to interview Braddock during his investigation of the incident but did not believe he could do so while Braddock was held out of service following the results of his drug and alcohol screening. Dkt. No. 35-5 at ECF p. 9:6-25. Braddock has not presented evidence of comparators who were treated differently during a disciplinary process after being accused of similar misconduct. Nor has Braddock presented evidence that employees can be brought in for interviews on disciplinary matters while held off from work by SEPTA medical, such that Matejik could have actually interviewed him.

Finally, Braddock argues that temporal proximity supports his argument that there "is sufficient evidence from which the jury could conclude that there exists a causal connection between the protected activity by [p]laintiff and the[] subsequent adverse action[]." Dkt. No. 36 at ECF p. 12-13. When relying on temporal proximity to establish causation, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 331 (3d Cir. 2015) (internal citations omitted). "Where the temporal proximity is not unusually suggestive," courts must "ask whether the proffered evidence, looked at as a whole, may suffice to raise the inference."

13

LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (internal citations omitted).

Defendants maintain that the timing in this case is not unusually suggestive despite Braddock's alleged complaint of discrimination on April 19, 2011 and Matejik's April 29, 2011 decision to seek Braddock's termination. Dkt. No. 35 at ECF p. 16. Defendants argue that Matejik had already begun investigating the yard trailer incident on April 18, 2011 and thus the timing of his decision to seek termination was based on when his investigation of the incident concluded. Id. Additionally, defendants argue that Braddock was not actually terminated until May 20, 2011, over a month after Braddock's complaint and after he met with Jamison to discuss the proposed discipline. Id. Defendants maintain that Braddock is seeking to "insulate himself from the legitimate effects of his conduct simply by making an unfounded complaint of discrimination." Id. at ECF p. 17.

Even examining the shorter period between Braddock's phone call and Matejik's recommended termination rather than his actual termination date, I agree that the timing alone is not unusually suggestive of retaliatory motive here. This is because Matejik was already in the process of investigating the yard trailer incident when Braddock spoke to him on the phone, and Matejik eventually recommended discipline after he completed his investigation. See Motto v. Wal-Mart Stores E., LP, 563 F. App'x 160, 163-64 (3d Cir. 2014) (finding an eleven-day period between a complaint and alleged retaliation not unusually suggestive of retaliatory motive where "[t]he timing was dictated by how long it took . . . to properly investigate the situation and reach a decision").

However, examining the evidence as a whole, Braddock has highlighted evidence to support causation — such as Matejik's substantial discussion of their phone conversation as a

14

basis for termination in his letter, the recommendation of an unrelated SEPTA Manager of less severe discipline and Braddock's clean prior disciplinary record. Further, the facts of the yard trailer incident remain disputed. Defendants argue that there is no question of causation because Jamison testified in his deposition that he would have terminated Braddock for the yard trailer incident alone, but relying on this deposition testimony would require a credibility determination that I cannot make at the summary judgment stage. I find that there remain genuine issues of material fact as to whether Braddock's alleged protected activity was a but-for cause of his termination after his phone call with Matejik.

## III.    Pretext[7]

Having put forward a legitimate non-discriminatory reason for Braddock's termination, defendants argue that Braddock cannot show that their articulated reason was pretext for retaliatory motive. Braddock argues that many underlying facts remain disputed and that he has presented circumstantial evidence from which a reasonable jury could find that defendants' reason was pretext.

Once a defendant has made its showing of a legitimate non-discriminatory reason for an adverse employment action, the burden of production shifts back to the plaintiff "to provide evidence from which a factfinder could reasonably infer that the employer's proffered

---

[7]     Braddock does not appear to dispute in his brief that defendants have satisfied their burden to articulate a legitimate reason for Braddock's termination. If a plaintiff can establish a prima facie case of retaliation, "the burden of production shifts to the employer to articulate some legitimate, non-retaliatory reason for the adverse employment action." Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007), as amended (Aug. 28, 2007). An employer's burden at this stage is "relatively light: it is satisfied if the defendant articulates any legitimate reason" for the adverse action against an employee and "need not prove that the articulated reason actually motivated" the adverse action. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997) (citation omitted). Defendants have met their burden in putting forward a legitimate non-discriminatory reason for Braddock's termination: Braddock's alleged misconduct at the female yard trailer.

justification is merely a pretext for discrimination." Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013).  To meet this burden, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). "[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Fuentes, 32 F.3d at 765 (internal citations omitted).  A plaintiff "need not prove that retaliation was the sole reason for the [employer's] decision; she must prove, however, that it was a determinative factor of the employment decision, meaning that she would not have been terminated but for her protected activity." LeBoon, 503 F.3d at 232 n.8 (emphasis in original).

Braddock makes several arguments to support his contention that defendants' use of the incident at the female yard trailer as the reason for his termination is pretext for retaliatory motive.  Braddock first argues that the accusations made by the women who reported the yard trailer incident were false, relying for support on findings from his post-determination hearing where he was reinstated.  "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765.  "The pretext issue is not whether [the defendant] had cause to terminate [the plaintiff], but rather whether it believed it

had such cause and acted upon that belief." Brokenbaugh v. Exel Logistics N. Am., Inc., 174 F. App'x 39, 45 (3d Cir. 2006). Braddock also argues that defendants denied him "due process" by failing to interview him before he was terminated. Dkt. No. 36 at ECF p. 14.

Defendants argue that Braddock has been unable to identify evidence that the accusations against him were false beyond his own retelling of the events. They also note that Jamison did interview Braddock prior to making the final decision to terminate his employment, which Braddock does not appear to dispute. See Dkt. No. 35-4 at ECF p. 22:3-24:20. I agree that these facts alone would be insufficient evidence upon which Braddock could rely to survive summary judgment at the pretext stage. See Burgess v. Dollar Tree Stores, Inc., No. 14-1727, 2015 WL 463936, at *8 (E.D. Pa. Feb. 4, 2015) aff'd, No. 15-1544, 2016 WL 496236 (3d Cir. Feb. 9, 2016) (noting that the plaintiff "must point to some evidence extrinsic to her own testimony to support her contention of pretext"); see also McCormick v. Allegheny Valley Sch., No. 06-3332, 2008 WL 355617, at *16 (E.D. Pa. Feb. 6, 2008) (noting that when "an employer relies on statements and complaints by co-workers when making a decision to terminate an employee, the employee cannot later establish pretext by simply challenging the veracity of such statements" provided that "the decision-maker reasonably credited the allegations").

However, as with his argument supporting a finding of but-for causation at the prima facie stage, Braddock points to defendants' written reactions to his conversation with Matejik and another SEPTA Manager's recommendation of lesser disciplinary action as evidence of pretext outside of his own testimony. Braddock argues that defendants' position that he was "insubordinate when he complained that his supervisor subjected him to race discrimination" is "direct evidence from [d]efendants from which the jury could find [d]efendants' reason for terminating [p]laintiff [w]as false or pretext." Dkt. No. 36 at ECF p. 14.

Defendants maintain that "the undisputed record evidence is that Mr. Braddock was terminated for his use and misuse of the female bunkhouse and he would not have been terminated for his insubordinate tone alone" because Jamison testified to this at his deposition. Dkt. No. 37 at ECF p. 12-13.  Jamison's deposition testimony about how his decision-making process may have been different under different circumstances cannot here conclusively end the analysis.  This is not a case where Braddock's own testimony is the only evidence of pretext or where the details of the underlying incident are undisputed beyond Braddock's presence in the yard trailer.  Cf. Rodriguez v. Auto Zone, No. 12-3916, 2014 WL 197894, at *6 (D.N.J. Jan. 14, 2014) (finding that the plaintiff could not show that the reason he was fired was pretext when he admitted to the conduct that formed the basis of his employer's reason for termination and there was "no dispute that [his] action could result in termination"); Carswell v. UPMC/UPMC Braddock Hosp., No. 12-1611, 2014 WL 1050713, at *1 (W.D. Pa. Mar. 18, 2014) (finding that the plaintiff could not establish that her protected activity was a but-for cause of her termination where the record evidence of the plaintiff's tardiness and prior discipline was undisputed). Further, like the remaining question of fact on causation in Braddock's prima facie case, many factual issues remain disputed at this stage and would require weighing the credibility of various witnesses to determine the outcome.  Therefore, I will deny defendants' motion for summary judgment on Braddock's retaliation claims to the extent that they rely on his phone call with Matejik.

## III.   Individual Defendants Matejik and Jamison

Defendants argue that Braddock's PHRA claims against individual defendants Matejik and Jamison must be dismissed because Braddock has "failed to proffer any evidence" that either defendant "aided, abetted, or facilitated the retaliation."  Dkt. No. 35 at ECF p. 21.  Braddock

18

argues that Matejik and Jamison should be held individually liable because Matejik recommended Braddock's termination as his supervisor and Jamison approved Braddock's termination.[8]

Section 955(e) of the PHRA makes it unlawful for "any person, [or] employer . . . to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice . . . or to attempt, directly or indirectly, to commit any act declared . . . to be an unlawful discriminatory practice."  43 P.S. § 955(e).  Liability under § 955(e) attaches only to supervisory employees.  Dici v. Commw. of Pa., 91 F.3d 542, 552-53 (3d Cir. 1996).

Defendants' argument about Braddock's lack of evidence for his § 955(e) claims against Matejik and Jamison relies on the Court of Appeals' reasoning in Dici when discussing liability for a non-supervisory employee.  See Dici, 91 F.3d at 552-53.  The Court of Appeals in Dici determined that a non-supervisory employee who allegedly harassed the plaintiff could not be held liable under the PHRA on the sole basis of his alleged direct discriminatory actions against the plaintiff.  Id. at 552-53.  The Dici Court distinguished the plaintiff's PHRA claim against her supervisor because her supervisor was a "proper defendant under § 955(e)" whose knowledge of the plaintiff's harassment and refusal to take action to end it, if proven, could result in individual liability.  Id. at 553.

Here, Matejik was Braddock's direct supervisor; he initiated Braddock's termination and based his termination letter in part on a conversation with Braddock that forms the basis for Braddock's retaliation claim.  See Dkt. No. 35-5 at ECF p. 12:24-13:2; Dkt. No. 35-10 at ECF p. 6-7.  Jamison was Matejik's direct supervisor, interviewed Braddock and made the ultimate

---

[8]      Braddock also argues for individual liability under 42 U.S.C. § 1983.  Dkt. No. 36 at ECF p. 17.  I previously dismissed Braddock's § 1983 claims but granted him leave to amend; he did not amend his complaint to reassert those claims.  See Dkt. No. 23 at ECF p. 16.

decision to terminate Braddock.  See Dkt. No. 35-5 at ECF p. 48:1-5; Dkt. No. 35-4 at ECF p.

22:3-24:20; Dkt. No. 36-6 at ECF p. 21:20-22.  PHRA liability for Matejik and Jamison's actions

hinges on the outcome of Braddock's disputed Title VII retaliation claim.  Thus, I will deny

defendants' motion for summary judgment on Braddock's PHRA claims against defendants

Matejik and Jamison individually.

## IV.   Damages

Finally, defendants contend that several of Braddock's claims for damages must be

dismissed because Braddock received a complete lump sum payment for back pay, including

overtime and vacation time, after he was reinstated with SEPTA.[9]  Dkt. No. 35 at ECF p. 21.

Braddock signed a receipt when he received this lump sum that states that the "payment is in

accordance [with] the Post Determination Hearing Answer and represents all back pay owed."

Dkt. No. 35-10 at ECF p. 9.  However, Braddock argues that there are discrepancies in the

amount defendants owe him and that defendants failed to reimburse him for several forms of

damages he sustained during his period of termination.  Dkt. No. 36 at ECF p. 15-17.

First, Braddock maintains that his payment for back wages was miscalculated based on

plaintiff's counsel's own calculation of the payments owed.  Dkt. No. 36 at ECF p. 15-16.

Braddock's counsel bases his calculation on an assumption that Braddock was not reinstated

until after he received his back payment, without citing any evidence in the record to support his

argument.[10]  See id.  Additionally, Braddock contends that his overtime "was absolutely not

---

[9]      In addition to the damages addressed in this section, Braddock's complaint seeks
damages for "mental anguish, emotional distress, humiliation, and damages to reputation." Dkt.
No. 15 at ¶¶ 53, 60.  Defendants do not address these forms of damages in their motion.  To the
extent that Braddock's filings refer to punitive damages, I previously dismissed Braddock's
claims for punitive damages.  See Dkt. No. 23 at ECF p. 16.

[10]      It is uncontested that Braddock received his back wage payment from SEPTA on
June 22, 2012.  See Dkt. No. 36-3 at ECF p. 35.  However, contrary to Braddock's argument

accounted for" in his back payment, resulting in lost overtime pay.[11]  Id. at ECF p. 16.  Yet, SEPTA's notes on Braddock's back pay calculation show that SEPTA did include overtime when computing what he was owed.  See Dkt. No. 37-1 at ECF p. 5.  Braddock has not made a showing that his back wage or overtime payments were miscalculated or otherwise inaccurate as supported by the factual record.  Therefore, I will grant defendants summary judgment on Braddock's back wage and overtime payment claim.

Second, Braddock contends that he is entitled to lost retirement account contributions that SEPTA should have contributed to his account while he was terminated.  Braddock relies on one undated pay stub, in which most of the text is so dark and blurred that it is unreadable, to support his contention that "SEPTA contributes towards [p]laintiff's retirement account every pay period."  Dkt. No. 36 at ECF p. 16; see Dkt. No. 36-5 at ECF p. 8.  Defendants argue that Braddock "has not proffered any evidence that he either would have or did make contributions to his account to cover that period" and that he "cannot now . . . claim that he never received matching contributions when he did not place any of his back pay award into his retirement account in the first place."  Dkt. No. 37 at ECF p. 14.  I agree that Braddock has failed to point to any evidence showing that he was entitled to matching retirement account contributions during the period of his termination.  Thus, I will grant defendants summary judgment on Braddock's retirement account contributions claim.

Next, Braddock argues that he is entitled to damages for "approximately $30,000 he had

---

about the calculation of his back wages, it appears that Braddock had already been reinstated by the time he received this payment.  See id. at ECF p. 34.

[11]    Braddock also argues that the payment he received included an "unexplained deduction."  Dkt. No. 36 at ECF p. 15.  As defendants point out, this figure is not a separate deduction.  Instead, it indicates the sum of all deductions from Braddock's back pay award as part of a summary of earnings, taxes, deductions, and net pay; the deductions are individually itemized in the upper portion of the document.  See Dkt. No. 35-10 at ECF p. 9.

to withdraw [from his retirement account] in order to supplement the . . . unemployment monthly benefits he received during the time he was terminated."  Dkt. No. 36 at ECF p. 16.  Braddock has not submitted any evidence of these withdrawals, despite defendants' contentions that they made "specific discovery requests seeking information" substantiating Braddock's withdrawals.  Dkt. No. 37 at ECF p. 14.  Defendants also argue that this "money that plaintiff withdrew from his retirement account and placed in another account belonging to him for his own use" is not recoverable.  Id. at ECF p. 15.  Even if these withdrawals were an appropriate measure of damages, Braddock has not shown that he sustained a loss.  Thus, I will grant defendants summary judgment on Braddock's retirement account withdrawals claim.

Finally, Braddock maintains that he is entitled to the attorney's fees he incurred during his post-determination hearing.  Defendants maintain that Braddock cannot now recover attorney's fees incurred for that prior proceeding.  Braddock provides evidence of payments but cites no authority to support his position that the attorney's fees he paid during his post-determination hearing within SEPTA's internal disciplinary appeals process are a recoverable form of compensatory damages.  See Dkt. No. 36 at ECF p. 16-17.

Defendants cite to two decisions in the labor context to argue that "attorneys' fees in a prior action are not a measure of damages in this case."  Dkt. No. 37 at ECF p. 15, citing Summit Valley Indus. Inc. v. Local 112, United Bhd. of Carpenters & Joiners of Am., 456 U.S. 717, 721-25 (1982) and Mead v. Retail Clerks Int'l Ass'n, Local Union No. 839, 523 F.2d 1371, 1379-81 (9th Cir. 1975).  The analysis in those decisions is based on statutory language and legislative history in the Labor Management Relations Act, which is not at issue here.  See Summit Valley, 456 U.S. at 721.  Indeed, the Supreme Court has held that Title VII permits courts to award attorney's fees and costs incurred during mandatory state and local proceedings to prevailing

parties.  N.Y. Gaslight Club, Inc. v. Carey, 447 U.S. 54, 61-63 (1980).  However, there is no

evidence that Braddock was obligated to pursue a post-determination hearing at SEPTA prior to

filing with the PHRC, the EEOC or any relevant local agency once he was terminated.  Although

requiring parties to "bear the costs of mandatory state and local proceedings . . . would inhibit the

enforcement of a meritorious discrimination claim" for parties seeking to vindicate their

substantive rights, the same is not true of an optional proceeding.  See Carey, 447 U.S. at 63, see

also N.C. Dep't of Transp. v. Crest St. Cmty. Council, Inc., 479 U.S. 6, 14 (1986).  Braddock has

made no showing or argument to the contrary.  Therefore, I will grant defendants summary

judgment on Braddock's claim for attorney's fees from his post-determination hearing with

SEPTA.

## **CONCLUSION**

For the reasons stated above, defendants' motion for summary judgment will be granted

in part and denied in part.  I will grant summary judgment for defendants on Braddock's claims

of retaliation based on his EEO complaint.  I will also grant summary judgment for defendants

on the issue of damages for back pay, overtime back pay, matching retirement account

contributions, retirement account withdrawals and attorney's fees from Braddock's post-

determination hearing within SEPTA's disciplinary appeals process.  In all other respects, I will

deny defendants' motion.

An appropriate Order follows.